# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEROME KASON LYLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 23-190-MU |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerome Kason Lyles brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 7 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case…order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and oral argument

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this action.

presented at the November 28, 2023, hearing before the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I. PROCEDURAL HISTORY

Lyles applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on April 9, 2020, alleging disability beginning on January 1, 2019. (Doc. 6, PageID.281-285). His application was denied at the initial level of administrative review on September 11, 2020, and upon reconsideration by undated letter. (Doc. 6, PageID.160-166, 186-188). Lyles requested a hearing by an Administrative Law Judge ("ALJ") on August 3, 2021. (Doc. 6, PageID.168-169). Lyles appeared at a hearing before the ALJ by Microsoft Teams on January 4, 2022. (Doc. 6, PageID.108-129). Lyles appeared at a Supplemental Hearing before a different ALJ by Microsoft Teams on October 31, 2022. (Doc. 6, PageID.75-107). On December 8, 2022, the ALJ issued an unfavorable decision finding that Lyles was not under a disability during the applicable time period. (Doc. 6, PageID.39-61). Lyles appealed the ALJ's decision to the Appeals Council, and, on April 20, 2023, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Doc. 6, PageID.25-31).

After exhausting his administrative remedies, Lyles sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed the social security transcript on July 19, 2023. (Doc. 6). Both parties filed briefs setting forth their

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 6. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

respective positions. (Docs. 9, 10). Oral argument was held before the undersigned Magistrate Judge on November 28, 2023. (Doc. 11).

## II.  CLAIMS ON APPEAL

Lyles alleges that the ALJ committed reversible error in violation of Social Security Regulations 20 C.F.R. §416.945, 20 C.F.R. §404.1545, and Social Security Ruling 96-8p in that the Administrative Law Judge's residual functional capacity ("RFC") determination was not supported by substantial evidence. (Doc. 9, PageID.1210). Specifically, Lyles alleges that the ALJ erred in finding that his tinnitus, bilateral pes planus, and anxiety and depression are not severe impairments. (*Id.*)

## III. BACKGROUND FACTS

Lyles was born on December 16, 1980, and was thirty-eight years old on his alleged onset date and forty-three years old on the date he was last insured for DIB.  (Doc. 6, PageID.281-285, 314).  He has one year of college education and received a certificate from the Coast Guard as an electrician.  (Doc. 6, PageID.112, 319). He has past relevant work experience as an electrician's mate and a construction worker. (Doc. 6, PageID.55, 112-115, 125-126).   Plaintiff's last date of work was in January 2019. (Doc. 6, PageID.112-115, 319).  Lyles alleged that he is unable to work due to back, shoulder, and foot problems, as well as irritable bowel syndrome and gout. (Doc. 6, PageID.318).

## IV. ALJ'S DECISION

The ALJ considered all the evidence of record and evaluated Plaintiff's claim in accordance with the five-step sequential evaluation process set forth in the regulations. (Doc. 6, PageID.39-61). The ALJ determined Lyles meets the insured status requirements of the Act through March 30, 2024 ("date last insured"). (Doc. 6, PageID.44). At step one

3

of the sequential disability evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2019.[3] (Doc. 6, PageID.46). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease and sciatica; cervical degenerative disc disease and stenosis; degenerative joint disease of the bilateral shoulders; and gout. (*Id*.). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6, PageID.47).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. (Doc. 6, PageID.48-55). The ALJ found Lyles could perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> This claimant can lift and carry ten pounds frequently and twenty pounds occasionally. He can sit for a total of six hours during an eight-hour workday. He can stand and walk for a total of four hours during an eight-hour workday. He can occasionally use his upper and lower extremities to push and pull. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally climb ramps and stairs, but cannot climb ladders, ropes, and scaffolds. He can frequently reach, handle, and finger. He cannot work in concentrated exposure to extreme heat and cold. He cannot work around unprotected heights.

(Doc. 6, PageID.48). At step four, the ALJ found Lyles unable to perform past relevant work. (Doc. 6, PageID.55). At step five, relying on testimony from a vocational expert, the ALJ found that, given Plaintiff's RFC and vocational profile, there were jobs existing in significant numbers in the national economy that he could perform, such as a cashier II (Dictionary of Occupational Titles (DOT) No. 211.462-010), an information clerk (DOT No. 237.367-018), and a storage facility rental clerk (DOT No. 295.367-026). (Doc. 6,

---

[3] Based on testimony from Lyles at his second hearing before the ALJ, his last date of work was amended to February 1, 2019. (Doc. 6, PageID.88-89).

PageID.55-56). Based on this analysis, the ALJ found Lyles not disabled within the meaning of the Act from his alleged onset date through the date of the ALJ's decision on December 13, 2022. (Doc. 8, PageID.56).

## **V. STANDARD OF REVIEW**

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(e). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam)

(citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

As set forth above, Lyles claims that the ALJ erred in making an RFC determination that is not supported by substantial evidence and thereby concluding that Lyles can perform jobs existing in significant numbers in the national economy. Specifically, Lyles

alleges that the ALJ erred in finding that Plaintiff's tinnitus, bilateral pes planus, and anxiety and depression are not severe impairments. (Doc. 9, PageID.1211-15). Lyles further alleges that that the ALJ did not appropriately evaluate the opinions of various medical providers in assessing his RFC. (Doc. 9, PageID.1215-16).

### A. Severe Impairments

Lyles contends that the ALJ erred in finding that his tinnitus, bilateral pes planus, and anxiety and depression are not severe impairments. (Doc. 9, PageID.1219). An impairment is severe only if it significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522.  However, under the circumstances presented here, the Court need not determine whether the ALJ correctly concluded that these impairments were not severe. As noted above, step two of the sequential analysis requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments. *See Hearn v. Comm'r, Soc. Sec. Admin*., 619 F. App'x 892, 895 (11th Cir. 2015); *Watkins*, 457 F. App'x at 870 (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips*, 357 F.3d at 1237). A "finding of **any** severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." *Id*. (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) (emphasis added). "Based on [Eleventh Circuit] precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014).

Here, the ALJ found that Lyles did have severe impairments of lumbar degenerative disc disease and sciatica, cervical degenerative disc disease and stenosis,

degenerative joint disease of the bilateral shoulders, and gout, which significantly limit his ability to perform basic work activities. (Doc. 6, PageID.45). On the other hand, Plaintiff has failed to prove that his tinnitus, bilateral pes planus, and anxiety and depression have caused additional limitations on his ability to work. As to tinnitus, the ALJ noted that Plaintiff was not presently receiving treatment and, coupled with his hearing testimony and other medical evidence, including normal results of a September 24, 2019 audiological exam, Plaintiff's tinnitus was not severe. (Doc. 6; PageID.45, 616-18). Similarly, as to Plaintiff's flat feet, the record demonstrates no significant limitation. Although Plaintiff received a diagnosis of flat feet and reported pain when walking long distances, he nevertheless testified to using a treadmill and stationary bicycle to exercise. (Doc. 6, PageID.93). Furthermore, the record noted times Plaintiff was able to walk with a normal gait without an assistive device. (Doc. 6, PageID.45, 1113).

Finally, as to Plaintiff's anxiety and depression, the ALJ concluded that Plaintiff's mental impairments caused no more than mild limitations in the functional areas of persisting and maintaining pace and adapting or managing oneself and, thus, were not severe. (Doc. 6, PageID.46). In reaching this conclusion, the ALJ noted Plaintiff's limited treatment history and that his mental status evaluations yielded relatively unremarkable findings. (Doc. 6, PageID.47). The ALJ also noted that, despite Plaintiff's history of anxiety and depression, he is able to provide for his personal care, prepare simple meals, run a lawnmower, pick up around the house, shop online, care for his pets, maintain a driver's license and drive, and exercise by walking on the treadmill or riding a stationary bike. (Doc. 6, PageID.46-47).

Plaintiff takes issue with the ALJ's reliance on a psychiatric review of the record performed by Robert Estock, MD, a state agency psychological consultant, in June 2021. (Doc. 9, PageID.1213; *see* Doc. 6, PageID.137-146). The ALJ noted that Dr. Estock assessed no more than mild levels of difficulty in concentrating, persisting, and maintaining pace as well as adapting and managing oneself. (Doc. 6, PageID.46). The ALJ considered this opinion persuasive, because she found it consistent with the medical and non-medical evidence and further noted that Dr. Estock's opinion is supported by his subject matter specialization and a history of medical and vocational analysis for the Administration. (Doc. 6, PageID.46). These are all appropriate considerations in evaluating medical opinions. *See* 20 C.F.R. § 404.1520c(c).

Plaintiff objects to the ALJ's reliance on Dr. Estock's review because he states that Estock's opinion dated June 9, 2021, was issued before the submission of a VA examination conducted by Kathleen Payne, Ph.D. dated May 5, 2021, and therefore was not based on a complete review of Plaintiff's condition. (Doc. 9, PageID.1213-14; *see* Doc. 6, PageID.62-74). Relatedly, Plaintiff argues that the Mental Disorders Benefits Questionnaire (the "Questionnaire") completed by Dr. Payne, which led to Plaintiff receiving a Rating Decision from the VA dated May 15, 2021, assigning a 50% rating to his service-connected depressive disorder,[4] is additional evidence that should have been

---

[4] Plaintiff later received a second Rating Decision from the VA dated June 17, 2022, based on his "request for a Higher Level of Review," which increased his 50% rating for his service-connected depressive disorder to 100%. (Doc. 6, PageID.459-63 (Exhibit 19E)). The updated Rating Decsion notes that the rating increase was based on "review of the evidence, most notably VA contract examination dated May 5, 2021 and VA medical Center Treatment records, which notes suicidal ideation, hopelessness, sad mood, social isolation, anhedonia, irritability, problems sleeping, feeling of worthlessness/insecurity." (Doc. 6, PageID.460). The updated Rating Decision was not based on any new evidence, as it notes that "the evidentiary record closed as of the date of the notice of our prior decision." (Doc. 6, PageID.459).

considered in the determination of his claim. (Doc. 9, PageID.1213-15; *see* Doc. 6, PageID.363-65 (Exhibit 8E)).

The Questionnaire was not part of the record at the time of the ALJ's decision, with Plaintiff noting to the Appeals Council: "[w]hile this exam was not in the file for some reason at the time of the [ALJ's] decision," the VA's Rating Decisions that referenced this exam were in the record. (Doc. 6, PageID.474). No further explanation was ever given for the Questionnaire not being in the record at the time of the ALJ's decision. The Appeals Council reviewed the newly presented Questionnaire and stated that it found "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (Doc. 6, PageID.25-26). In sum, the Appeals Council denied review of the ALJ's decision and did not add the Questionnaire to the evidence considered. In appealing to this Court for review, Plaintiff did not challenge the Appeal Council's failure to consider the Questionnaire or its decision to deny review, instead arguing only that the ALJ's RFC determination was not supported by substantial evidence. (Doc. 9, PageID.1210).

In *Falge v. Apfel*, the plaintiff similarly presented new evidence to the Appeals Council, and the Appeals Council denied review of the claim. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). The Eleventh Circuit explained its general rule for this situation: "when the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge*, 150 F.3d at 1323. However, the Court then noted an exception to the general rule is provided under 42 U.S.C. § 405(g), which permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence upon a showing

10

that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. *Id.* (citations omitted). But Lyles, like Falge, has provided no explanation, let alone good cause, for his failure to introduce the Questionnaire prior to the hearing before the ALJ.

In another exception to the general rule, the Eleventh Circuit noted that "'[w]hen the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is...subject to judicial review because it amounts to an error of law.'" *Id*. at 1324 (citing *Keeton v. Dep't of Health & Hum. Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994)). But because Falge did not challenge the Appeals Council's decision to deny review and only challenged whether the ALJ's decision was supported by substantial evidence, the Court held that it would only look at the evidence that was before the ALJ.  *Id.* Stated another way, the Eleventh Circuit explained: "[w]e understand *Falge* to hold that when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007). The same facts are presented here, and accordingly, this Court cannot consider the newly presented Questionnaire in deciding whether the ALJ's decision was supported by substantial evidence, and specifically, whether Plaintiff's anxiety and depression amounted to a severe impairment.

Finally, even if the ALJ erred by finding that Plaintiff's tinnitus, bilateral pes planus, and anxiety and depression were non-severe impairments at step two, any such error was harmless because the ALJ preceded to the next steps in the sequential evaluation and considered the combined effects of *all* impairments, both severe and non-severe, in formulating his RFC. (Doc. 6, PageID.47).  Plaintiff, however, argues that the error was not harmless because Plaintiff's RFC does not contain any limitations on his ability to perform the mental tasks of competitive work, and the vocational expert testified that being off task for close to 15% of the workday would generally preclude competitive employment. (Doc. 9, PageID.1217; Doc. 6, PageID.128). But, as noted above, the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity" and did not find any limitations to Plaintiff's ability to perform basic mental work activities.  (Doc. 6, PageID.46-47). Further, as discussed below, the ALJ is not required to give any weight to the fact that Lyles was ultimately considered 100% disabled by the VA due to his service-connected depressive disorder. (Doc. 6, PageID.448, 459-63).   As a result, this Court discerns no reversible error in the ALJ's failure to specifically identify any additional severe impairments.

**B. ALJ's RFC Determination**

Lyles argues that the ALJ's RFC determination was not supported by substantial evidence.  Specifically, Lyles challenges the ALJ's failure to properly evaluate medical evidence from the VA.  (Doc. 9, PageID.1213-17). Lyles also challenges the ALJ's failure to find persuasive the opinion of the Commissioner's own examining nurse practitioner Chastity Huguely. (Doc. 9, PageID.1213-16).

### 1. Evaluation of VA Medical Evidence

For claims filed on or after March 27, 2017, such as the subject application, the Social Security regulations recognize that:

> [o]ther governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs...make disability…and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the Commissioner] and is not [the Commissioner's] decision about whether [the claimant is] disabled or blind under [the SSA's] rules.

20 C.F.R. § 404.1504. Therefore, the ALJ is not required to "provide any analysis in [his] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits[,]" but "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [is] receive[d] as evidence in [the] claim..." *Id*.

Regarding the opinions of various providers from the VA, the ALJ stated:

> A number of other VA disability ratings are found in the record (Exhibits 8E, l3E, l9E, and 1F). However, these are not persuasive under the same analyses broadly applicable above. They use a fundamentally different underlying standard. They are inconsistent with the objective findings outlined herein.

(Doc. 6, PageID.53). Plaintiff argues that the ALJ "erred in not evaluating these opinions individually" and in not "considering them in assessing the RFC." (Doc. 9, PageID.1216). However, under 20 C.F.R. § 404.1504, the ALJ properly declined to rely on the VA's disability ratings because they were issued under that agency's own rules and regulations. There is no requirement that the ALJ address the VA's disability ratings at

all, much less individually, or take them into consideration when determining the RFC because they are not medical evidence.

On the other hand, the ALJ's opinion demonstrates that he appropriately considered the underlying medical evidence from the VA, stating "the undersigned has fully considered all of the same evidence considered by the VA in awarding the claimant his disabled veteran status (20 CFR 404.1513(a)(1) through (4)), and finds that under the Social Security Disability standard, the claimant is not disabled." (Doc. 6, PageID.49). Lyles disputes that the underlying VA evidence was properly considered, noting that the ALJ referenced Exhibit 1F (*see* Doc. 6, PageID.477-572) in a grouping with exhibits of VA disability ratings, even though Exhibit 1F actually consists of multiple Disability Benefits Questionnaires completed in conjunction with medical examinations of Lyles. (Doc. 9, PageID.1216).  But it is clear from a complete review of the ALJ's decision that he considered this underlying medical evidence and did not dismiss it as simply a disability rating.  *See* Doc. 6, PageID.50 ("A mid-July 2018 disability questionnaire noted the claimant's complaints of back pain. On exam, he exhibited a decreased range of motion (Exhibit 1F/4). However, there was no evidence of muscle atrophy. Strength was full on exam. Straight leg raising was negative for pain. Consistent with the mild signs, diagnostic impressions included lumbar degenerative disc disease (Exhibit 1F/13)."). Accordingly, contrary to Plaintiff's suggestions otherwise, the ALJ's decision did discuss and consider the medical records underlying the VA's disability determinations and found Plaintiff to have, among other impairments, a severe impairment of degenerative disc disease.

**2. Evaluation of Medical Opinions**

Lyles also argues the ALJ erred in failing to find persuasive the opinion of the Commissioner's own examining nurse practitioner Chastity Huguley.[5] (Doc. 9, PageID.1216). CRNP Huguley rendered an opinion following a consultative examination on May 21, 2022, which was ordered after the January 2022 ALJ hearing. (Doc. 6, PageID.1110-26). No reversable error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 404.1513(a). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: ... (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).[6]

---

[5] NP Huguley is inadvertently referred to throughout the ALJ's opinion as "Hughley."

[6] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Lyles's. The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id*.: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

"The most important factors...are supportability...and consistency..." 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors...when... articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior

administrative medical findings in [the] case record[,]" *id*., unless the Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported...and consistent with the record...but are not exactly the same..." *Id*. § 404.1520c(b)(3).

Lyles argues that "CRNP Huguley's opinion is consistent with the VA C&P examiner, and she gave limitations that preclude Plaintiff's ability to work." (Doc. 9, PageID.1216). The ALJ provided the following analysis of CRNP Huguley's medical opinion:

> It is noted that Nurse Practitioner Hughley opined that the claimant exhibited poor balance during the consulting exam in May 2022, but this opinion is not persuasive (Exhibit 13F). It is inconsistent with the claimant's admitted daily activities, his lack of an assistive device, and often normal gait elsewhere. It is inconsistent with the contemporary imaging evidence. Further inconsistent are the signs of full strength in the upper extremities and on gripping. This is consistent with a residual functional capacity permitting frequent handling and fingering. The claimant's full leg flexion is also noted. Also inconsistent are the exam findings showing the claimant capable of rising from a sitting position without an assistive device. He had no difficulty getting onto and off of the exam table. There was no sign of imbalance or severe pain during these actions. Also noted is the claimant's normal tandem walking. There were only mild limitations noted for grasping. The functional assessment is altogether not persuasive because it is internally inconsistent with the exam findings. It is also inconsistent with the objective testing in the record, and it appears to be based on the claimant's subjective complaints.
>
> Nurse Practitioner Hughley further opined that the claimant had moderate limitations in sitting, standing, walking, lifting, carrying, bending, squatting, reaching, handling, and feeling. She cited the claimant's pain in the shoulders, elbows, back, knees, and feet. This is opinion is not persuasive as the opinion is vague (Exhibit 13F).
>
> Nurse Practitioner Hughley also completed a functional assessment finding that the claimant could lift ten pounds frequently but cannot carry any weight. The claimant could sit, stand, and/or walk fifteen minutes at one time in total during an eight hour workday. He could occasionally reach, handle, finger, feel, push and pull with his upper extremities but was precluded from pushing and pulling with the lower extremities. The claimant

>could not perform any postural activities. He was further precluded from work around unprotected heights, moving mechanical parts, motor vehicles, pulmonary irritants, humidity/wetness, extreme cold, extreme heat, or vibrations. The claimant would require a quiet noise environment. In providing this opinion, Nurse Practitioner Hughley referenced the claimant's reports of musculoskeletal pain. The undersigned finds this opinion not persuasive and overly restrictive. It is internally inconsistent with the exam findings noting the claimant exhibited a normal reciprocal gait pattern, inconsistent with the objective imaging noted more fully above, and inconsistent with the claimant's acknowledged activities of daily living including using a treadmill and exercise bike.

(Doc. 6, PageID.53-54). This detailed analysis explains why the ALJ found NP Huguley's opinion overly restrictive as it was inconsistent in many respects, including with the Plaintiff's own reports of his activities, contemporary medical imaging, and findings from Huguley's exam itself. The ALJ's decision indicates that he sufficiently considered NP Huguley's opinion under the required factors, Lyles has failed to convince the undersigned that the ALJ's conclusion was based on an irrational view of the record as a whole, and the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *See Chester*, 792 F.2d at 131. Accordingly, the Court will not disturb the ALJ's decision to find Huguley's opinion unpersuasive.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **6th** day of **September, 2024.**

s/P. BRADLEY MURRAY  
**UNITED STATES MAGISTRATE JUDGE**